United States District Court
Southern District of Texas
**ENTERED**
November 08, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RYAN  HITCHINS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-95 |
| | § | |
| CHRISTOPHER J GALE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION TO DISMISS

Plaintiff Ryan Hitchins is a federal prisoner appearing *pro se* and *in forma pauperis*.  In raising state law claims against Defendants, Plaintiff asserts that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Pending before the Court are Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (D.E. 12) and their request for monetary sanctions against Plaintiff (D.E. 18, pp. 4-5).  For the reasons stated herein, it is respectfully recommended that the Court **GRANT** Defendants' Motion to Dismiss, **DENY** Defendants' request for monetary sanctions, and **DISMISS** this action for lack of subject matter jurisdiction.

## I.    BACKGROUND

On August 18, 2009, in the United States District Court for the Western District of Oklahoma Plaintiff was convicted of several bank robbery charges and sentenced to 180 months in prison to be served concurrently.  (*United States v. Hitchins*, Nos. CR-08-201, CR-08-243, and CR-08-296 (W.D. Okla.)).   Between 2012 and 2016, Plaintiff was

housed by the Federal Bureau of Prisons (BOP) in the following federal facilities throughout the country: (1) the Federal Correctional Institution (FCI) in Beaumont, Texas (FCI-Beaumont); (2) the Federal Medical Center (FMC) in Butner, North Carolina (FMC-Butner); (3) the FCI-Butner II in Butner, North Carolina; (4) the United States Penitentiary in Bruceton Mills, West Virginia (USP-Hazelton); (5) the United States Penitentiary Coleman I in Sumterville, Florida (USP-Coleman I); and (6) the FCI-Coleman Medium in Sumterville, Florida (FCI Coleman Medium).

Plaintiff is currently housed by the BOP at the United States Medical Center for Federal Prisoners in Springfield, Missouri (USMCFP-Springfield).   In this action, Plaintiff sues the Gale Law Group (GLG) and two GLG attorneys, Christopher J. Gale and Amie Augenstein-Pratt.   (D.E. 1, pp. 1-2).   Plaintiff claims that Defendants committed legal malpractice in connection with their representation of him in a separate federal civil case, breached their fiduciary duty owed to Plaintiff, and violated the Texas Deceptive Trade Practices Act (DPTA).

### A.   Defendants' Representation of Plaintiff

On April 21, 2015, Plaintiff and his mother, Catherine McMullen, entered into an agreement (Agreement) with Defendants.   (D.E. 1-1, pp. 2-11).   Ms. McMullen provided her initials and signature to the Agreement while Plaintiff did not.   As the listed "Client" under the Agreement, Plaintiff and his mother retained Defendants in to "[i]nvestigate and file suit against the [BOP] for medical indifference associated with [Plaintiff's] medical care related to his diagnosis and treatment of Squamous Cell Carcinoma and

regarding indifference related to his resulting prosthesis."  (D.E. 1-1, p. 2) (emphasis omitted).

Defendants, in turn, agreed to provide services to the best of their abilities but made no representations or guarantees as to the outcome of the case.  (D.E. 1-1, p. 2). Plaintiff and his mother agreed to pay: (1) two engagement fees totaling $10,000.00; (2) an advanced retainer in the amount of $10,000.00 for expenses; (3) the hourly rates of Defendants Gale and Augenstein at $250.00 and $175.00, respectively; and (4) contingency fees in the amount of $33.3% for any monies and property collected before suit or, if a suit is filed, 40.0% from the proceeds of any settlement or final judgment. (D.E. 1-1, pp. 3-5).

On July 13, 2015, Defendants filed on Plaintiff's behalf an administrative claim (No. TRT-MXR-2015-05322) with the BOP under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq*.  (D.E. 1-1, pp. 41-46).  Therein, Plaintiff claimed he was not provided adequate medical treatment for his serious throat condition while housed at Federal Correctional Complex (FCC) in Butner, North Carolina, and the USP-Hazelton. (D.E. 1-1, pp. 4, 42-44).  On December 29, 2015, the BOP denied Plaintiff's administrative tort claim, concluding that Plaintiff had failed to suffer any injury "due to the lack of or delay in medical care, or the deliberate indifference of any [BOP] employee."  (D.E. 1-1, p. 48).

On June 24, 2016, Defendants filed a civil rights action on Plaintiff's behalf in the United States District Court for the Northern District of Texas.  (*Hitchins v. Federal Bureau of Prisons*, No. 3:16-CV-1772-M-BH (N.D. Jun. 24, 2016. D.E. 1).  Through

Defendants as counsel, Plaintiff filed his first amended complaint which named the BOP as the sole defendant. (*Id.*, D.E. 2). Therein, Plaintiff asserted that he "was denied medical care and equal access to programs, services, and activities of the [BOP] because of medical indifference and/or absence of accommodations for disabled inmates at numerous at numerous Federal Corrections Facilities, in violation of Section 1983 of the Civil Rights Act . . ., Title II of the Americans with Disabilities Act [ADA], and Section 504 of the Rehabilitation Act [RA]." (*Id.*, D.E. 2 at p. 1). Plaintiff's claims arose out of events occurring at the FCI-Beaumont, the FMC-Butner, the FCI-Butner II, the USP-Hazelton, the USP-Coleman I, and the FCI-Coleman Medium. (*Id.*, D.E. 3 at pp. 5-16).

On February 21, 2017, the BOP moved to dismiss Plaintiff's first amended complaint for failure to state a claim for relief and for improper venue. (*Id.*, D.E. 20, 21). On March 20, 2017, Plaintiff through Defendants as counsel filed a motion seeking leave to file a second amended complaint and to substitute party. (*Id.*, D.E. 27). Plaintiff specifically sought leave to: (1) remove his claims under § 1983, the ADA, and the RA; (2) add a FTCA claim and substitute the "United States of America" in place of the BOP as the correct defendant; and (3) add claims under *Bivens*[1] for First and Eighth Amendment violations against the individual wardens of each federal facility housing Plaintiff during the relevant time period. (*Id.*, D.E. 27, pp. 1-2).

On April 14, 2017, United State Magistrate Judge Irma Carrillo Ramirez of the Northern District of Texas granted Plaintiff's motion to amend, directed the clerk to file the second amended complaint, and denied the BOP's motion to dismiss as moot. (*Id.*,

---

[1] *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

D.E. 38).  Plaintiff's second amended complaint reflected that Plaintiff was a resident of Pennsylvania based upon his incarceration at that time in the United States Penitentiary in Allenwood, Pennsylvania.  (*Id.*, D.E. 39 at p. 4).

On April 28, 2017, the United States filed a motion to dismiss Plaintiff's FTCA claim.  (*Id.*, D.E. 40, 41).  The United States first contended that Plaintiff's FTCA claim should be dismissed for failure to file same within six months following the denial of Plaintiff's administrative tort claim on December 29, 2015.  (*Id.*, D.E. 41 at pp. 2-6).  The United States further argued that the Northern District of Texas was not the appropriate venue for Plaintiff's FTCA claim.  (*Id.*, D.E. 41, pp. 6-9).  Even assuming Plaintiff's residency in the Northern District of Texas prior to his federal incarceration, the United States asserted that venue was improper there "because the alleged acts of negligence in Plaintiff's Second Amended Complaint allegedly occurred in Florida, West Virginia, North Carolina, and Pennsylvania – not in the Northern District of Texas."  (*Id.*, D.E. 41 at p. 6).

On June 1, 2017, Plaintiff through Defendants as counsel filed an Unopposed Stipulation of Dismissal of Claims.  (*Id.*, D.E. 49).  On June 6, 2017, District Judge Barbara M.G. Lynn granted Plaintiff's unopposed stipulation and dismissed his claims against all defendants named in the Second Amended Complaint without prejudice.  (*Id.*, D.E. 50).

**B.  Plaintiff's Complaint against Defendants**

Plaintiff states in his complaint that he is a citizen of the state of North Carolina.  (D.E. 1, p. 1).  He further states that the BOP "has scheduled supervised release with the

Oklahoma based Office of Probation and Parole." (D.E. 1, p. 1).  According to Plaintiff, Defendants Gale and Augenstein-Pratt are citizens of the State of Texas, and the GLG is incorporated in Texas with its principle place of business in Texas.  (D.E. 1, pp. 1-2). Thus, Plaintiff maintains there is a complete diversity of citizenship between the parties. Furthermore, Plaintiff states that the amount in controversy exceeds the requisite jurisdictional amount as he seeks money damages in the amount of $2,500,000.00.  (D.E. 1, pp. 2, 7).

In Count I, Plaintiff asserts that Defendants committed legal malpractice in connection with their representation of him in *Hitchins v. Federal Bureau of Prisons*. (D.E. 1, p. 4).  Plaintiff alleges that Defendants' numerous errors "effectively time barred all claims and rendered further pursuit of the FTCA and *Bivens* action futile by statute of limitations restrictions."   (D.E. 1, p. 4).   On January 24, 2018, Plaintiff provided Defendants with notice of his claim for legal malpractice against them for all injuries related to their representation of Plaintiff in *Hitchins v. Federal Bureau of Prisons*.  (D.E. 1, p. 5; D.E. 1-1, p. 51).

In Count II, Plaintiff asserts that Defendants breached their fiduciary duty owed to Plaintiff by engaging in the following deceptive and fraudulent practices: (1) informing Plaintiff's mother that Judge Lynn had dismissed his federal lawsuit without mentioning the voluntary unopposed stipulation filed by Defendants; (2) claiming a lack of malpractice insurance in an attempt to have Plaintiff withdraw his malpractice claim; (3) "leveraging a $5,000.00 fee previously paid for unrelated services to coerce [Plaintiff into] withdrawing the claim or lose representation; and (4) threatening to fraudulently bill

Plaintiff $30,000 for continued work on the case that was dismissed.  (D.E. 1, pp. 5-6).  In Count III, Plaintiff asserts that these fraudulent and deceptive practices violate the DPTA.  (D.E. 1, pp. 6-7).

### C.  Pending Motions

On May 1, 2018, Defendants filed a Motion to Dismiss Plaintiff's complaint pursuant to Rules 12(b)(1), 12(b)(6), and 28 U.S.C. § 1332.  Plaintiff subsequently filed his response.  (D.E. 15).  On June 21, 2018, Defendants filed their reply.  (D.E. 18).  On July 6, 2018, Plaintiff filed his sur-reply.  (D.E. 21).  Three days later, Defendants filed a motion requesting a hearing on the pending Motion to Dismiss.  (D.E. 22).

## II.    LEGAL STANDARD

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist.  *Id*.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).   A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).   A court ruling on a Rule 12(b)(6) motion may also consider matters of which the court takes proper judicial notice.   *See Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995) ("Federal courts are permitted to refer to matters of public record when deciding a Rule 12(b)(6) motion to dismiss."); *Cinel v. Connick*, 15 F.3d 1338, 1343, n.6 (5th Cir. 1994) ("In deciding a 12(b)(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

## III.   DISCUSSION

Defendants first move the Court to dismiss Plaintiff's lawsuit for lack of subject matter jurisdiction because: (1) he fails to state any federal claims; and (2) there is a lack of diversity jurisdiction under § 1332.   (D.E. 12, pp. 5-6, 9-10).   Defendants contend that diversity jurisdiction does not exist because Plaintiff and all Defendants are citizens of Texas.   (D.E. 12, p. 10).

Plaintiff states in his response that, throughout the entirety of his incarceration, the BOP recorded Plaintiff's domicile as 3201 Huddlestone Dr., #104, Raleigh, North Carolina, 27612.  (D.E. 15, p. 10).  Plaintiff further states that he will reside in Oklahoma following his incarceration because he had been directed to report to the Oklahoma Western Probation Office.  (D.E. 15, p. 10).  Plaintiff effectively contends that he is a citizen of a different state than Defendants, whether North Carolina or Oklahoma.  (D.E. 15, p. 10).

In reply, Defendants maintain that Plaintiff resided in Texas before his incarceration and that Plaintiff has submitted no evidentiary support for his assertion that he intends to become a resident of Oklahoma.  (D.E. 18, pp. 1-2).  Defendants have submitted evidence which, according to them, contradicts Plaintiff's statements of residency.  (D.E. 18, pp. 3-4).  Defendants further ask the Court to impose monetary sanctions against Plaintiff in the amount of $4,200 based on his "abuse of the judicial process" and "flagrant disregard for the litigation process."  (D.E. 18, pp. 4-5).

Plaintiff counters in his sur-reply that he has presented evidence establishing his residence in North Carolina before his arrest and his intention to reside in Oklahoma upon his release from incarceration.  (D.E. 21, pp. 2-3).  He offers no argument with respect to Defendants' request to impose sanctions.

Lastly, Defendants have filed a motion requesting a hearing on their motion to dismiss because they believe Plaintiff has made untruthful assertions regarding his residency and would like him to provide testimony under oath.  (D.E.  22).  Defendants reiterate that Plaintiff has presented insufficient evidence showing his intent to reside in

Oklahoma or otherwise suggesting he resided in North Carolina prior to his incarceration. (D.E. 22, p. 3).

### A.   Diversity Jurisdiction and Prisoner Citizenship

A district court's original jurisdiction consists of either federal question jurisdiction or diversity jurisdiction.   28 U.S.C. §§ 1331, 1332.   Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States.   28 U.S.C. § 1331.   A federal district court has diversity jurisdiction over civil matters "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states."   28 U.S.C. § 1332(a).   Plaintiff's claims arise solely pursuant to Texas law.   As such, the Court has jurisdiction over this case only if diversity jurisdiction exists.

The diversity statute requires complete diversity of citizenship, meaning that all persons on one side of the controversy must not share the same citizenship as any one person on the other side.   *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 297 (5th Cir. 2010); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008).   For the purposes of jurisdiction, diversity of citizenship must exist at the time the complaint is filed.   *Mas v. Perry,* 489 F.2d 1396, 1398–99 (5th Cir. 1974).   For diversity jurisdiction to exist in this case, Plaintiff must be considered a citizen of a state other than Texas as it is undisputed that Defendants are all citizens of Texas.

"In cases [such as the instant action] where a prisoner's citizenship is at issue, federal courts have held that [he] is a citizen of the state of which he was a citizen before he was sent to prison unless he plans to reside elsewhere when he is released, in which

event he is a citizen of that state." *Davis v. Guthrie*, No. 3:13-CV-1704, 2014 WL 46130, at *3 (N.D. Tex. Jan. 6, 2014) (internal quotations and citations omitted).  This rule is "based on the notion . . . that a change of domicile requires a voluntary act and that the domicile of a person cannot be changed by virtue of the legal and physical compulsion of imprisonment." *Bridwell v. Ferrell*, No. 3:07-CV-1575, 2008 WL 2388715, at *2 (N.D. Tex. May 9, 2008) (citing *Jones v. Hadican*, 552 F.2d 249, 250-51 (8th Cir. 1977)).

### *(1)  Plaintiff's Domicile Before his Incarceration*

In *Davis v. Guthrie*, Magistrate Judge Irma Carrillo Ramirez summarized as follows the applicable legal principles in determining a prisoner's citizenship for diversity jurisdiction purposes:

> "A United States citizen who is domiciled in a state is a citizen of that state." *Coury v. Prot,* 85 F.3d 244, 249 (5th Cir. 1996); *see also* U.S. CONST. AMEND. XIV, § 1.  Consequently, for purposes of determining diversity jurisdiction, a person's state citizenship is generally "regarded as synonymous with domicile." *Id.*  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom ...'" *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.1974) (quoting *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954)).
>
> "[A]lthough the place of residence is prima facie the domicile," "residence alone is not the equivalent of citizenship," and "citizenship is not necessarily lost by protected absence from home, where the intention to return remains." *Stine,* 213 F.2d at 448.  Accordingly, whenever a person relocates, there is a presumption that his or her domicile remains the same. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 793, 797–98 (5th Cir.2007) (citing *Coury,* 85 F.3d at 248)).  This presumption may be defeated by a demonstration of "both (1) residence in a new state, and (2) an intention to remain in that state indefinitely." *Acridge v. Evangelical Lutheran Good Samaritan Soc.,* 334 F.3d 444, 448 (5th Cir. 2003) (citing

*Coury,* 85 F.3d at 250).  "There is no durational residence requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established." *Id.*

The Fifth Circuit has identified several factors to consider in determining a person's "intention to establish domicile," such as "the places where [he] exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Coury,* 85 F.3d at 251 (citations omitted); *Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir. 1972).  The Fifth Circuit has also emphasized that "[d]omicile is ... evaluated in terms of objective facts," and a person's "statements of intent are entitled to little weight when [they] conflict with [those] facts."  *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 556 (5th Cir. 1985); *Hendry,* 455 F.2d at 956.

*Davis*, 2014 WL 46130, at *3-4 (footnote omitted).

Defendants have submitted records showing that that, on April 2, 2008, Plaintiff was placed on deferred adjudication community supervision in state criminal proceedings (Cause Nos. F-0711206, F-0811033 and F-0844810) brought in Dallas County, Texas. (D.E. 12-4).  At the time Plaintiff plead guilty to these state charges, he listed his address as either Dallas or Addison, Texas.  (D.E. 12-4, pp. 1, 5, 8).  Three months later, in July 2008, Plaintiff was arrested and detained in federal custody arising from illegal conduct in Texas and Oklahoma that led to his bank robbery convictions.  (*United States v. Hitchins*, No. CR-08-201, D.E. 12).

Plaintiff contends however, that he resided in Raleigh, North Carolina and not in Texas immediately before his incarceration.   Plaintiff has submitted a BOP custody review document, dated February 6, 2018, which shows his "Release Residence" as 3201

Huddlestone Dr., #104, Raleigh, North Carolina, 27612.  (D.E. 21, p. 1).  This document reflects that this residence belongs to his sister, Holly Davis.  (D.E. 21, p. 1).  Plaintiff also includes his sister's current address in the BOP document as 106 Dove Song Drive, Leander, TX 78641.  (D.E. 21, p. 1).  Plaintiff has presented no additional evidence to support his statement that he was domiciled in North Carolina prior to his incarceration.

Defendants, on the other hand, have submitted email communications from Plaintiff's mother which contradict Plaintiff's claim of establishing residence in North Carolina.  Ms. McMullen stated therein that Plaintiff never lived in North Carolina and that his sister only lived in North Carolina for less than a year starting sometime around 2009 and 2010.  (D.E. 22-1, p. 1-3).  Ms. McMullen further confirmed that Plaintiff's sister currently lives in Leander, Texas.  (D.E. 22-1, p. 2).   In a declaration dated June 21, 2018, Ms. McMullen stated that Plaintiff intends to move to Leander, Texas, after his release from prison because his sister and brother-in-law have offered him a place to live.  (D.E. 18-4).  Defendants have further presented evidence showing that Plaintiff was issued a Texas driver's license in 2001.  (D.E. 18-1).

No evidence has been presented showing that Plaintiff ever had a North Carolina driver's license or conducted any meaningful business activity in that state.  Furthermore, Plaintiff presents no evidence to suggest that he  intends to reside in North Carolina upon his release from custody.[2]  The objective evidence presented instead demonstrates that Plaintiff established a Texas domicile rather than a North Carolina domicile prior to his

---

[2] Rather than suggest an intent to return to North Carolina, Plaintiff argues that he plans to settle in Oklahoma upon his release from custody.

incarceration on his federal bank robbery charges.  Based on Plaintiff's Texas domiciliary prior to his incarceration, Plaintiff is deemed a Texas citizen.  *See Coury,* 85 F.3d at 249.  Accordingly, he has failed to meet his burden of establishing diversity jurisdiction on this basis.  *See Bridwell,* 2008 WL 2388715, at *2 (holding that the plaintiff failed to meet his "burden of establishing the court's [diversity] jurisdiction" where "[h]is complaint [was] devoid of any allegations establishing that he was a Missouri resident immediately prior to his incarceration" in a Texas prison, and where all of the objective facts showed he was a resident of Texas at that time).

### (2)  *Plaintiff's Domicile After Release from Incarceration*

In order to rebut the presumption that he retains Texas citizenship based on his domicile prior to incarceration, Plaintiff must show that he intends to reside in another state after his release.  *Davis*, 2014 WL 46130, at *5 (citations omitted).  Plaintiff states that he intends to reside in Oklahoma following his federal incarceration because he was directed to report to the Oklahoma Western Probation Office.  He states that he plans to comply with the conditions of his supervised release and not alter his place of domicile.  (D.E. 21, p. 3).

In assessing a prisoner's intent, courts have considered the prisoner's declaration of his intentions and the manner in which he has ordered his personal and business transactions, and well as any other evidence that corroborates his statements."  *Davis*, 2014 WL 46130, at *5 (internal quotations and citation omitted).  "As previously noted, the Fifth Circuit has identified several factors that are relevant in determining, generally, a person's 'intention to establish domicile,' such as the places where he exercises civil

and political rights, pays taxes, owns real and personal property, has driver's and other licenses, and maintains bank accounts and a family home." *Id.* (citing *Coury,* 85 F.3d at 251; *Hendry,* 455 F.2d at 956).

Plaintiff presents no evidence to corroborate his statement of intention to establish a domicile in Oklahoma upon his release from federal custody. Plaintiff's exhibits attached to his sur-reply reveal the address of the Oklahoma Western Probation Office as well as the fact that the Western District of Oklahoma is the sentencing jurisdiction. (D.E. 21-1, pp. 2-3). Plaintiff has submitted portions of his federal judgment of conviction showing that the Oklahoma district court directed him to report within 72 hours of his release from federal custody to the probation office to which Plaintiff is released in order to serve his three-year term of supervised release. (D.E. 21-1, p. 5).

Contrary to Plaintiff's contention, the Oklahoma district court did not direct him specifically to return to the Western District of Oklahoma to serve his term of supervised release. The BOP's form for Notice of Release and Arrival, provided by Defendants, allows a federal prisoner to specify his district of residence for relocation cases upon release. (D.E. 22-2). Plaintiff has not provided a completed form to demonstrate the jurisdiction to which he will be released following his federal incarceration. He further presents nothing to show that he owns any real or personal property in Oklahoma, that he holds an Oklahoma driver's license, that he maintains any bank accounts in Oklahoma, that he conducts or plans to conduct any business activity in Oklahoma, or that he has relatives who live in Oklahoma.

Conversely, as discussed above, Defendants have presented the declaration of Plaintiff's mother in which she states that Plaintiff intends to move to Leander, Texas, after his release from prison because his sister and brother-in-law have offered him a place to live.  (D.E. 18-4).  Defendants have presented additional evidence showing that Plaintiff remains on probation in Dallas County, Texas, and that he may be compelled to return to Dallas County upon his release from federal custody.  (D.E. 18-2, 18-3).  On July 28, 2008, a "Capias" was issued for Plaintiff's arrest arising from violations of his probation in Cause Nos. F-0711206, F-0811033 and F-0844810.  (D.E. 18-2).  On September 18, 2009, the U.S. Department of Justice mailed a Detainer Action Letter to the Dallas County District Court inquiring whether the county intended to have a detainer placed on Plaintiff.  (D.E. 18-3).

In light of Plaintiff's failure to present objective evidence or facts to support his statement regarding his intention to reside in Oklahoma, Plaintiff cannot rebut the presumption that he retains Texas citizenship based on his domicile prior to incarceration. *See Davis*, 2014 WL 46130, at *5.  *See also Chapa v. Ingram,* 116 F. App'x 476, 477 (5th Cir. 2004) (per curiam) (finding prisoner's contention that "he should not be considered a citizen of Texas, the state where he lived prior to his incarceration, because he [did] not intend to reside there once he ha[d] served his sentence," without more, was "insufficient to rebut the presumption that he [was] a citizen of Texas" for purposes of diversity jurisdiction) (citation omitted).

Because no diversity of citizenship exists between Plaintiff and Defendants, the undersigned recommends that Defendants' Motion to Dismiss under Rule 12(b)(1) for

lack of subject matter jurisdiction be granted.  It is, therefore, unnecessary for the Court to consider whether Plaintiff has stated a claim for relief with respect to any of his state law claims.

### B.  Sanctions

Without citing any authority, Defendants seek monetary sanctions against Plaintiff in the amount of $4,200 based on his "abuse of the judicial process" and "flagrant disregard for the litigation process."   (D.E. 18, pp. 4-5).   The jurisdictional issue presented in this case, however, is not a frivolous one.  Plaintiff, as a *pro se* litigant, has made a good faith effort in arguing that diversity jurisdiction exists in this case. Defendants otherwise have failed to demonstrate that sanctions are warranted. Accordingly, the undersigned recommends that Plaintiff's request for sanctions be denied.

## IV.    CONCLUSION

For the reasons foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) (D.E. 12) be **GRANTED**, that Defendants' request for monetary sanctions (D.E. 18, pp. 4-5) be **DENIED**, and that this action be **DISMISSED** for lack of subject matter jurisdiction.[3]

Respectfully submitted this 7th day of November 2018.

Jason B. Libby
United States Magistrate Judge

---

[3] In light of these recommendations, the undersigned will dismiss Defendant's motion for a hearing in a separate order.

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).